UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Elizabeth Taft, personally and as the Personal Representative of the Estate of Ethel Taft, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, N.A.,<br><br>    Defendant. | Civil No. 10-2084 (SRN/FLN)<br><br><br><br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Richard J. Fuller and Douglas L. Micko, Schaefer Law Firm, 400 South Fourth St., Suite 202, Minneapolis, Minnesota 55415; Andrew J. Dawkins, Mansfield Tanick & Cohen, PA, 220 South Sixth St., Suite 1700, Minneapolis, Minnesota 55402; Hart L. Robinovitch, Zimmerman Reed, PLLP, 14646 N. Kierland Blvd., Suite 145, Scottsdale, Arizona 85254, and Marisa C. Katz, Vildan A. Teske, and William H. Crowder, Crowder Teske, PLLP, 222 South Ninth St., Suite 3210, Minneapolis, Minnesota 55402; for Plaintiff.

Charles F. Webber, Ellen B. Silverman, and X. Kevin Zhao, Faegre & Benson LLP, 90 South Seventh St., Suite 2200, Minneapolis, MN 55402, for Defendant Wells Fargo Bank, N.A.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss [Doc. No. 34] and on Plaintiff's Motion for Partial Summary Judgment [Doc. No. 37]. For the reasons stated below, this Court grants the Motion to Dismiss, denies the Motion for Partial Summary Judgment, and dismisses the Second Amended Complaint [Doc. No. 33] with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Elizabeth Taft is the personal representative for the estate of her mother, Ethel Taft. Elizabeth Taft contends that her mother entered into a reverse mortgage loan with Defendant Wells Fargo, and that this reverse mortgage violated several Minnesota statutes, one South Dakota statute, a federal law, and constituted a breach of contract and unjust enrichment. In this lawsuit, she seeks to represent a class of similarly situated individuals.

Reverse mortgages, or Home Equity Conversion Mortgages ("HECM"), are not an uncommon way for older people to reap the benefits of the equity they have in their homes. Indeed, in an amendment to the National Housing Act ("NHA"), Congress specifically encouraged reverse mortgages by authorizing the Department of Housing and Urban Development ("HUD") to insure such mortgages through a program administered by the Federal Housing Administration ("FHA"). According to Congress, reverse mortgages were necessary to address "the special needs of elderly homeowners." 12 U.S.C. § 1715z-20(a). Although nominally only an insurance program for reverse mortgages, the statute essentially sets forth the requirements for federally insurable reverse mortgages and instructs the HUD Secretary to make regulations enforcing those requirements.

Under HUD's reverse mortgage program, a homeowner over the age of 62 can receive what is essentially a home equity loan that the homeowner does not have to pay back. Rather, on the sale of the home or the death of the homeowner, the lender is repaid

the amount of the loan, with interest, and any remaining equity goes either to the homeowner or to the homeowner's estate. The interest on the reverse mortgage is put back into the principal amount of the loan according to federal law. 24 C.F.R. §§ 206.25(e), 206.19(e). Thus, for example, an older homeowner whose home is worth $200,000, and who owns the home free of any encumbrances, can receive a reverse mortgage for all or a portion of that $200,000, and can receive those proceeds either as a monthly annuity or a lump-sum payment.

At issue are three types of fees Wells Fargo charged Plaintiff's mother: origination fees, servicing fees, and mortgage insurance charges. The parties do not dispute that Wells Fargo charged these fees, or that, rather than paying cash for the fees, Plaintiff's mother opted to borrow the money for the fees, so that the amount of the fees was added to the principal balance of Plaintiff's mother's reverse mortgage loan. Nor do the parties dispute the amount of the fees charged, and Plaintiff does not contend that charging such fees was in itself improper. Rather, the crux of her Complaint is that, by adding these fees to the principal loan amount, Wells Fargo charged an effective interest rate that was higher than the parties' agreement and higher than both Minnesota and South Dakota law allow. Plaintiff also contends that Minnesota and South Dakota law prohibit including these types of fees in the principal loan amount. (See 2d Am. Compl. ¶ 2 [Doc. No. 33]) ("Plaintiff brings this action . . . for Well Fargo's inclusion of insurance premiums, excessive servicing fees, and/or loan origination fees in the principal amount of its loans in violation of applicable law.").)

The Second Amended Complaint raises six claims. The first three causes of action contend that Wells Fargo violated Minnesota law by including the charges in the principal balance of the loan. The fourth cause of action claims a violation of South Dakota law. The fifth cause of action is a claim of unjust enrichment, and the sixth contends that Wells Fargo violated the National Bank Act, 12 U.S.C. § 85.

## II.    DISCUSSION

### A.    Standard of Review

The parties agree that the question of Wells Fargo's liability is a question of law that is ripe for decision. Thus, although Wells Fargo seeks a dismissal under Rule 12(b)(6) and Plaintiff seeks partial summary judgment under Rule 56, there is no practical distinction between the two Motions. Plaintiff asserts that Wells Fargo violated the law; Wells Fargo denies that it violated the law. Where there are factual questions involved in this essentially legal decision, the Court will assume the facts in the Complaint to be true and will construe all reasonable inferences from those facts in the light most favorable to Plaintiff. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

### B.    Preemption

The question in this case is whether a state may, in the context of fixing interest rates that are applicable to a reverse mortgage loan, also define what constitutes interest.

The National Bank Act ("NBA") allows national banks to charge their customers interest at the rate allowed by the state in which the bank is located. 12 U.S.C. § 85; Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735 (1996). There is no dispute that, because of the interplay between the National Housing Act ("NHA"), the National Bank Act, and the regulations promulgated under both laws, a state may determine what rate of interest may be charged by a bank offering a federally insured reverse mortgage loan. The dispute is whether the state may also determine what charges are defined as interest.

### 1. Preemption Opt-Out

Plaintiff contends that the Court need not determine whether any of the state statutes on which the Second Amended Complaint relies are preempted because the parties have opted out of any possible federal preemption.

#### a. The Agreements

Plaintiff's first argument is that the parties have "opted out" of any possible preemption because the choice-of-law provision in the loan agreement provides that the parties' contract will be governed by Minnesota law. But the choice-of-law provision on which Plaintiff relies does not choose solely Minnesota law. Rather, that provision states that the agreement will be governed by "federal law and the law of the state in which the property is located." (Loan Agreement § 6.4, at WF14 (Docket No. 48-1).) Thus, even assuming that the parties could contract out of federal preemption,[1] the choice-of-law

---

[1] This is a doubtful proposition, a fact Plaintiff seems to realize by abandoning the argument in her reply memorandum. See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 289 U.S. 468, 490 (1989) (Brennan, J., dissenting)
continue...

provision cannot be used to avoid a preemption analysis.

### b. State Opt-Outs under the NHA

Plaintiff next argues that both Minnesota and South Dakota have opted out of the National Housing Act, so that the regulations allowing banks to include the disputed charges in the principal amount do not apply in Minnesota and South Dakota. The NHA sets limits on "the amount of interest which may be charged" by a bank in a real estate transaction under the NHA, and provides that state laws purporting to limit "the amount of interest which may be charged" do not apply to NHA mortgages. 12 U.S.C. § 1709-1a(a). However, the NHA allows states to opt out of this limitation, by enacting a law after June 30, 1976, expressly limiting "the amount of interest which may be charged." Id. § 1709-1a(b).

Plaintiff contends that Minnesota has, on four occasions, opted out of the NHA's interest-rate limits. Minn. Stat. §§ 47.203, 47.58, 47.59, and 48.195. Indeed, § 47.58 specifically addresses the interest rate allowed for reverse mortgage loans. Id. § 47.58, subd. 5.[2] Further, Plaintiff argues, by opting out of the NHA's interest-rate limits,

---

[1]...continue
("Choice-of-law clauses simply have never been used for the purpose of dealing with the relationship between state and federal law.") In the reply memorandum, Plaintiff argues only that the parties agreed in the loan documents to the application of state interest rates. (Pl.'s Reply Mem. at 4 [Doc. No. 65].) She concludes that the parties also agreed to the application of state definitions of interest, but does not press her initial argument that the parties somehow contracted around any federal preemption of the applicable state laws through the choice-of-law provision.

[2] This section sets the maximum interest rate for reverse mortgage loans at three percentage points above the posted yield on 30-year conventional fixed-rate mortgages or
continue...

Minnesota has also interposed the right to determine on what types of fees and charges banks may charge that state-prescribed interest rate. According to Plaintiff, Minnesota has defined what constitutes principal and what constitutes interest, so that charges such as those at issue—mortgage insurance charges, servicing fees over $50 per year, and origination fees—cannot be added to the principal of mortgage loans and interest charged thereon. Id. § 47.59, subd. 6. Plaintiff also contends that South Dakota has also opted out of the NHA's requirements. S.D. Codified Laws §§ 54-4-1.1, 53-3-8. And, as in Minnesota, South Dakota defines at least some of the disputed charges at issue here as interest. Id. § 54-3-1.

     Plaintiff's interpretation of the NHA opt-out provision is overbroad. The NHA specifically allows states to opt out of the NHA's interest rate, or "the amount of interest which may be charged." 12 U.S.C. § 1709-1a(b). It does not purport to allow states to opt out of all NHA regulations, and such a reading of the statute leads to absurd results. As discussed above, the NHA made reverse mortgage loans possible. It would be illogical for Congress to authorize banks to enter into reverse mortgage loans pursuant to strict national standards but then allow each state to set its own requirements for what may be included or not included in the principal balance of those loans. Moreover, Plaintiff points to no statute or regulation that recognizes a state's right to opt out of all NHA regulations, and the Court has found none. The Court will not define the statute's statement regarding "the amount of interest" to also include "the definition of what

---

    [2]...continue
15.75%, whichever is less. See Minn. Stat. § 47.20, subd. 4a.

constitutes interest." Plaintiff's contention that Minnesota and South Dakota have opted out of federal preemption is without merit.

### c. National Bank Act

Plaintiff's final argument regarding preemption is that the National Bank Act allows national banks to choose to be governed by state interest rate limits, 12 U.S.C. § 85, and that, having done so, Wells Fargo is bound not only by those state interest rate limits but by the state definitions of interest. (Pl.'s Opp'n Mem. at 6.) As discussed more fully below in the context of Plaintiff's breach of contract claim, the parties disagree about the relevant interest rate to which Wells Fargo is bound to comply. According to Plaintiff, Minnesota caps the interest rate on transactions such as this reverse mortgage loan at 7%. Minn. Stat. § 48.195. Wells Fargo contends there is no limit on the rate of interest under Minnesota law. Minn. Stat. § 334.01, subd. 2.

South Dakota does not limit the rate of interest a bank such as Wells Fargo may charge. S.D. Codified Laws § 54-3-13. And South Dakota law defines the fees at issue as interest. Id. § 54-3-1. But, according to Plaintiff, South Dakota restricts the amount of such interest a bank can capitalize, i.e., put back into the loan's principal. Id. § 54-3-8. Plaintiff contends that the amount of fees Wells Fargo included in the principal balance of Plaintiff's mother's loan exceeded the amount South Dakota allows.[3]

---

[3] However, § 54-3-8 does not apply here. This section provides that the parties may "deduct[] from the loan in advance" interest "which would become due at the end of the [loan's] term . . . , not exceeding one year's interest in all." By its terms, this section applies to the prepayment of interest, not to whether a bank can capitalize interest, and the Court has found no court decisions interpreting it in a different way. The loan agreement
continue...

Whatever the pertinent interest rate is, however, Plaintiff cannot establish that the fact that the NBA allows a bank to choose a state interest rate means that the bank must also be bound by how that state defines interest. Congress intended for the NBA to have the broadest possible preemptive sweep, and thus this Court is bound to view every state requirement that purports to regulate national banks with the scepticism the NBA's preemptive scope requires. But even aside from the strong presumption of preemption in the NBA, the regulations make clear that "the limitations on charges that comprise rates of interest on loans by national banks are determined under federal law." 12 C.F.R. § 34.4(a) n.1. In other words, states may prescribe interest rates, but state law does not govern the definition of interest for national banks under the NBA. Plaintiff's contention that Wells Fargo must be bound by state definitions of interest because it chose to be bound under the NBA's state interest-rate provision is without merit.

### 2. Preemption Analysis

Having determined that the parties have not opted out of the preemption analysis, the Court must now determine whether the state statutory provisions on which Plaintiff relies are preempted by federal law.

As an initial matter, and as discussed briefly above, there can be no doubt that Congress intended the NBA to displace state laws purporting to regulate a national bank's liability for alleged overcharges. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10

---

[3]...continue between Wells Fargo and Plaintiff's mother did not deduct any interest from the loan in advance.

(2003) ("Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from 'possible unfriendly State legislation.'") (quoting Tiffany v. Nat'l Bank of Mo., 85 U.S. (18 Wall.) 409, 412 (1873)). Indeed, the purpose of the NBA, in part, was to limit the exposure of national banks "to the hazard of unfriendly legislation by the States." Tiffany, 85 U.S. at 413. Thus, the NBA is one of the few federal statutes considered to completely preempt the field. Beneficial, 539 U.S. at 10-11. It is within this strong preemptive framework that the Court must analyze the various federal regulations and state statutes at issue in the context of Plaintiff's claims under those statutes.

Federal regulations require the payment of a mortgage insurance premium of 2% of the loan amount at the time of closing. 24 C.F.R. §§ 206.105(a); 206.103. The regulations contemplate the borrower either borrowing the money for this initial insurance premium payment, in which case that money logically would be added to the principal balance, or making the payment in cash. Id. § 206.25(a). The regulations further specify that a monthly mortgage insurance premium payment "shall be added to the mortgage balance." Id. § 206.105(b). The terms of the loan agreement specified that Plaintiff's mother would borrow the initial mortgage insurance premium amount from Wells Fargo, and that Wells Fargo would then include the amount in the principal balance of the loan. (Loan Agreement §§ 1.2, 1.6.)

Wells Fargo also charged Plaintiff's mother an origination fee, which federal law

10

allows to be paid either in cash "or through an initial payment under the mortgage." 24 C.F.R. § 206.31(a)(1). Thus, Wells Fargo included the amount of the origination fee in the principal balance. Finally, Wells Fargo charged a servicing fee of $35 per month pursuant to federal regulations. Id. § 206.207(b). This regulation requires that the amount of the servicing fee be "set aside as a portion of the principal limit." Id.

Minnesota law,[4] on the other hand, sets forth what "additional charges may be included in the principal amount of the loan." Minn. Stat. § 47.59, subd. 6. That subdivision does not allow including mortgage insurance such as that at issue here in the principal amount of the loan. See id. subd. 6(a)(6) (allowing "charges for other benefits, including insurance, conferred on the borrower . . ." to be included in the loan's principal amount). The subdivision also prohibits including more than $50 per year in servicing fees. Id. subd. 6(c)(1). Plaintiff further contends that the Minnesota statutory framework depends on common-law definitions of interest, and that the common law defines charges such as origination fees, servicing fees, and mortgage insurance premiums as interest.

Plaintiff argues that the Court must apply Minnesota's definition of interest because the parties have not made a written election to apply other statutes. Minnesota law provides that a bank may elect to "make an extension of credit" under other statutory authority, but must "specify in the promissory note, contract, or other loan document the section under which the extension of credit is made." Minn. Stat. § 47.59, subd. 2.

---

[4] As discussed previously, South Dakota law is less specific than Minnesota as to what may permissibly be included in the principal balance, and the South Dakota statute on which Plaintiff relies does not apply to the charges at issue here. The Court will therefore only discuss Minnesota's statutory requirements in this analysis.

There is no dispute that Wells Fargo did not specify any applicable Minnesota statute in the loan documents here.

      The NBA regulations provide:

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans . . . without regard to state law limitations concerning . . . [r]ates of interest on loans.

12 C.F.R. § 34.4(a)(12). Plaintiff attempts to limit the preemptive scope of this section by focusing on the introductory statement: "[e]xcept where made applicable by Federal law." According to Plaintiff, this introduction should be read to mean that where other federal laws allow the incorporation of state laws regarding such things as interest rates and what constitutes interest, the preemptive sweep of § 34.4 does not apply. But even if state interest rates constituted something "made applicable by federal law," the regulation clearly prohibits state definitions of interest from applying to national banks: "The limitations on charges that comprise rates of interest on loans by national banks are determined under Federal law." Id. § 34.4(a)(12) n.1.

      Plaintiff points to another regulation as ostensibly allowing the states to define what constitutes interest. 12 C.F.R. § 7.4001 defines "interest" and provides that the "Federal definition of the term "interest" in paragraph (a) of [§ 7.4001] does not change how interest is defined by the individual states . . . solely for purposes of state law." Id. § 7.4001(c). Plaintiff insists that this provision means that state definitions of what constitutes interest apply to the loans at issue here. But given § 34.4(a)(12)'s express

12

preemption of state definitions of interest, such a reading of § 7.4001(c) would be strange indeed.  The preemptive scope of § 34.4(a) could not be more clear: all state laws purporting to regulate the rates of interest, and specifically state laws that purport to limit charges "that comprise rates of interest," are preempted by federal law.  Id. § 34.4(a)(12) n.1.

  Two months after the hearing on this matter, Plaintiff sent a letter to the Court purporting to correct a "citation error" regarding whether states may impose their own definitions of what constitutes interest.  (Sept. 20, 2011, letter from Richard J. Fuller to Court (Docket No. 68).)  According to Plaintiff, the correct citation in her memoranda should have been to 12 U.S.C. § 1735f-7, which ostensibly allows states to opt out of a federal statutory override with respect to "interest, discount points, or other charges which may be charged" on a loan.  (Id.)  Plaintiff argues that Minnesota did opt out of the federal statutory override, so that the Court must apply Minnesota law as to the "other charges" that may be charged on a loan.  (Id.)  Plaintiff neglects to mention, however, that the Minnesota legislature in fact chose the opposite course, opting to apply the federal statutory override rather than state definitions of interest.  Minn. Stat. § 47.204 provides, "[n]otwithstanding any law to the contrary . . . , no limitation on the rate or amount of interest, points, finance charges, fees, or other charges applies to a loan, mortgage, credit sale, or advance as described in [12 U.S.C.] section 1735f-7a . . . ."  Minn. Stat. § 47.204, subd. 1.  Thus, according to both federal and state law, federal law supplies the definition of interest for loans such as those at issue.  State laws to the contrary are preempted.

Accordingly, Plaintiff's claims that Wells Fargo violated state laws and the National Bank Act by including payments for mortgage insurance, origination fees, and servicing fees in the principal balance of her mother's reverse mortgage loan must be dismissed.

## C.   Breach of Contract

Plaintiff contends that Wells Fargo breached the parties' contract by charging more interest than the agreement allowed.  To the extent her argument on this point requires the Court to adopt the Minnesota definition of what can be included in the principal balance of the loan, however, the breach of contract claim fails.  The contract provided that Wells Fargo would include the fees at issue here in the principal balance of Plaintiff's mother's reverse mortgage loan.  Wells Fargo complied with all of those terms and Plaintiff's breach of contract claim fails.

Plaintiff also contends that the statements her mother received reflect an interest rate of 7.1%, which is higher than the 7% rate Minnesota law allows and is significantly higher than the 5.91% to which the parties agreed.  As an initial matter, the parties did not agree to a static interest rate of 5.91%.  Rather, the parties agreed to an initial interest rate of 5.91% that would change monthly thereafter, not to exceed 15.91%.  (Pl.'s Ex. B (Note) at 1.)  Thus, Plaintiff is incorrect as to what the contract required.

Plaintiff has also chosen the wrong Minnesota interest rate.  On extensions of credit of more than $100,000, Minnesota law imposes "no limitation on the rate or amount of interest, points, finance charges, fees, or other charges . . . ." Minn. Stat.

14

§ 334.01, subd. 2.[5]  Plaintiff contends that this section does not apply because her mother's initial draw under the reverse mortgage loan was only $12,000.  But the statute's language does not state that it applies only to initial draws of more than $100,000; it applies to "a loan, mortgage, credit sale, or advance . . . for the extension of credit to the debtor in the amount of $100,000 or more."  The reverse mortgage loan here was an extension of credit to Plaintiff's mother of more than $195,000.  Thus, section 334.01, subd. 2 applies and there is no limitation on the amount of interest Wells Fargo could charge under state law.  Plaintiff's breach of contract claim fails.

### D.    Unjust Enrichment

Finally, Wells Fargo is correct that, where the parties have an express contract, no claim for unjust enrichment is cognizable.  Under Minnesota law, "equitable relief cannot be granted where the rights of the parties are governed by a valid contract."  U.S. Fire Ins. v. Minn. State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1982).  Plaintiff's only argument that the contract is invalid is that the contract allowed Wells Fargo to include fees in the principal amount in alleged violation of state law.  But that argument is without merit, and the presence of a valid agreement therefore precludes a claim for unjust enrichment.  This claim is dismissed.

### E.    Conclusion

Although a national bank may choose to be bound to a state's interest rate ceiling,

---

[5] Section 334.01, subd. 2, was enacted nearly 20 years after the statute on which Plaintiff relies, Minn. Stat. § 48.195.  Thus, according to Minnesota's own construction-of-laws statute, the later-in-time section (§ 334.01, subd. 2) "shall prevail."  Minn. Stat. § 645.26, subd. 4.

that bank, when making a loan specifically authorized by federal law, is not also bound by how the state defines interest. Plaintiff's claims to the contrary are without merit.

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Wells Fargo Bank's Motion to Dismiss [Doc. No. 34] is **GRANTED**;

2. Plaintiff Elizabeth Taft's Motion for Partial Summary Judgment [Doc. No. 37] is **DENIED**; and

3. The Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Nov. 1, 2011                     s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge